**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

YERVIN KEITH BARNETT,        )
                           )
     Petitioner,          )
                           )
v.                      )         Case No. 2:22-cv-02577-SHL-atc
                           )
F.J. BOWERS,             )
                           )
     Respondent.      )

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS,
DENYING THE § 2241 PETITION, CERTIFYING THAT AN APPEAL WOULD
NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED *IN
FORMA PAUPERIS* ON APPEAL**

On August 31, 2022, Petitioner Yervin Keith Barnett, Bureau of Prisons register number 18755-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis"), filed a *pro se* Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("§ 2241 Petition"). (ECF No. 1.) On November 8, 2022, Warden F.J. Bowers filed Respondent's Motion to Dismiss Or, In the Alternative, Motion for Summary Judgment and Supporting Memorandum of Law arguing that Petitioner's claims should be dismissed as moot or for failure to state a claim. (ECF No. 6 at PageID 43, 45–47.) Petitioner did not file a reply. Because Petitioner's sentence has been corrected and he has received all credit due to him, Respondent's Motion to Dismiss is **GRANTED**, and the § 2241 Petition is **DENIED**.

### § 2241 PETITION

Petitioner seeks relief on the following grounds:

1. The Sentencing Monitoring Computation Data dated November 2, 2020, states that a new sentence of 184 months was imposed and that Petitioner's total term in effect shows a sentence of 184 months and six days, not 235 months. Petitioner contends

that the sentence is illegal because he was no longer an armed career criminal or
career offender (ECF No. 1 at PageID 6);

2.  The sentence computation as of September 2, 2021, shows a projected release of
    January 10, 2023, via good conduct time ("GCT"), and then the date changed to
    October 1, 2024, an eighteen-month increase without any explanation (*id.*); and

3.  Fifteen months of jail time credit should be awarded toward the current sentence and
    the total inoperative time should be 759 days, not 1,389 days (*id.*).

## BACKGROUND

Petitioner has an extensive criminal history involving multiple state-court convictions and
probation violations, one federal conviction, and one federal supervised-release violation. For
purposes of addressing the calculation of Petitioner's sentence, information about the relevant
convictions and sentences is included below.

On June 27, 2001, Petitioner was arrested by Tennessee state authorities for aggravated
burglary (Criminal Court for Shelby County, Tennessee, Case No. 01-12149). (Case No. 2:22-
cv-02577-SHL-atc ("Case 2577"), ECF No. 7 at PageID 50.) On March 15, 2002, he was
sentenced to three years in prison, which was suspended, to be followed by three years probation.
(*Id.*)

On July 4, 2002, Petitioner was arrested for aggravated burglary and intentionally
evading arrest in a motor vehicle by state authorities in Shelby County (Case No. 02-07649).
(*Id.*, ECF No. 7 at PageID 50.) This arrest was for the same incident that led to the federal
charges. He posted bond and was released on August 24, 2002. (*Id.* at PageID 50, 55, 57, 59.)
The case was dismissed on December 18, 2003. (*Id.*, ECF No. 6 at PageID 36.)

On November 19, 2002, a federal grand jury in the United States District Court for the
Western District of Tennessee returned an indictment charging Petitioner with one count of
being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (Case No. 2:02-cr-

20440-SHL ("Case 20440"), ECF No. 1 at PageID 152.)[1]  On December 5, 2002, Petitioner was arrested in connection with that indictment.  (*Id.*, ECF No. 3.)  He was released on bond on January 6, 2003.  (*Id.*, ECF No. 20.)

On February 18, 2003, Petitioner was arrested for criminal attempt aggravated burglary (Case Nos. 03-03687 and 03-03688) in Shelby County and released on bond the same day.  (*See* Case 2577, ECF No. 7 at PageID 50, 55.)  On March 10, 2003, Petitioner's probation was revoked in Case No. 01-12419, (*id.* at PageID 50), and he was arrested on March 28, 2003, on Case Nos. 03-03687 and 03-03688.  (*Id.* at PageID 59.)

On November 14, 2003, the jury returned a guilty verdict on the federal charges.  (Case 20440, ECF No. 77.)  On February 20, 2004, the Court sentenced Petitioner to 265 months in prison, to run consecutive to Petitioner's sentence in Case No. 01-12149, and to be followed by four years of supervised release.  (*Id.*, ECF No. 82.)

On February 24, 2004, Petitioner was sentenced to a two-year term of imprisonment in the Shelby County Criminal Court, Case Nos. 03-03687 and 03-03688.  (Case 2577, ECF No. 6 at PageID 37.)  The sentences ran concurrently.  (*Id.*)  Barnett was paroled from his state sentence on June 30, 2004, and entered federal custody.  (*Id.*)

On February 18, 2005, the United States Court of Appeals for the Sixth Circuit vacated the federal sentence and remanded the case for resentencing.  (Case 20440, ECF No. 94.)  On July 20, 2005, Petitioner was sentenced to a term of 235 months in prison, to run consecutive to Case No. 01-12149, and to be followed by four years supervised release.  (*Id.*, ECF No. 109.)

---

[1] Much of the information related to Barnett's criminal history is also contained in the Presentence Investigation Report generated in 2004 by the United States Probation Office in relation to his felon in possession charge.  That document, and others like it from that time period, is not accessible via the Court's electronic filing system.

Petitioner appealed (*id.*, ECF No. 110), and on June 16, 2006, the Sixth Circuit affirmed (*id.*, ECF No. 117).

On December 8, 2010, Petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("§ 2255 Motion").  (Case No. 2:10-cv-02877-BBD-cgc ("Case 2877"), ECF No. 1.)  On August 12, 2011, the Court denied the motion and entered judgment for the Government.  (*Id.*, ECF Nos. 5 & 6.)  Petitioner appealed.  (*Id.*, ECF No. 7.)  The appeal was dismissed for want of prosecution.  (*Id.*, ECF No. 9.)

Petitioner next filed a motion for authorization to file a second § 2255 motion based on *Begay v. United States*, 553 U.S. 137 (2008), and *Jones v. United States*, 689 F.3d 621 (6th Cir. 2012).  (*Id.*, ECF No. 11 at PageID 61.)  On March 20, 2013, the Sixth Circuit denied the motion.  (*Id.* at PageID 62.)

Petitioner filed a motion to reduce his sentence in September 2015.  (Case 20440, ECF No. 125-1.)  On April 11, 2016, the Court denied the motion.  (*Id.*, ECF No. 126.)

Petitioner filed a motion for authorization to file a second or successive § 2255 motion under *Johnson v. United States*, 135 S. Ct. 2551 (2015).  (*See* Case 2877, ECF No. 13 at PageID 65.)  Because the motion relied on *Johnson* and the Sixth Circuit's interpretation of Tennessee's aggravated burglary statute, the Sixth Circuit held the motion in abeyance pending the resolution of *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) ("*Stitt I*").  (*Id.* at PageID 66.)  On July 27, 2017, the Sixth Circuit granted authorization to file a second or successive § 2255 motion.  (*Id.*, ECF No. 14.)

On July 28, 2017, Petitioner, through counsel, filed a second or successive § 2255 motion.  (Case No. 2:17-cv-02548-SHL-dkv ("Case 2548"), ECF No. 1.)  On August 9, 2017, the Court entered an Order Granting Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence By A Person in Federal Custody and held that Petitioner was entitled to immediate release in light of the Sixth Circuit's opinion in *Stitt I*. (*Id.*, ECF No. 9 at PageID 39.) On August 18, 2017, the Court amended the judgment and sentenced Petitioner to time-served, to be followed by three years on supervised release. (Case 20440, ECF No. 139.) The Government appealed the Court's grant of § 2255 relief. (Case 2548, ECF No. 10.) On August 24, 2017, the Court entered the judgment on the § 2255 Motion. (*Id.*, ECF No. 12.)

On September 16, 2019, Petitioner again was arrested for aggravated burglary (Case No. 20 01015) by state authorities in Shelby County, Tennessee. (Case 2577, ECF No. 6 at PageID 38.)

On December 12, 2019, the Sixth Circuit reversed the grant of § 2255 relief here and remanded the case with instructions to reinstate the original sentence based on the United States's Supreme Court's decision in *United States v. Stitt*, 139 S. Ct. 399, 407 (2018) ("*Stitt II*"). (Case 2548, ECF No. 16 at PageID 69–71.) On June 25, 2020, the Court reinstated Petitioner's sentence. (*Id.*, ECF No. 20.)

On December 11, 2020, Petitioner was sentenced in Shelby County to a five-year term of imprisonment in Case No. 20-01015, to run concurrent to the sentence imposed in the federal case. (Case 2577, ECF No. 6 at PageID 38.) On June 1, 2021, Petitioner was paroled from his state sentence; he was released to federal custody on June 9, 2021. (*Id.*) On June 10, 2021, an arrest warrant was issued for Petitioner for a violation of supervised release. (Case 20440, ECF No. 155.) On July 9, 2021, the Court held a resentencing hearing and reinstated Petitioner's sentence of 235 months imprisonment pursuant to the ACCA based on *Stitt II*, to be followed by four years supervised release. (*Id.*, ECF No. 166.) The Court also sentenced Petitioner on the supervised release violation to 15 months in prison with no additional period of supervised

5

release.  (*Id.*, ECF No. 167.)  The fifteen-month term was to be served concurrent with

Petitioner's sentence in Case No. 20-01015 in the Shelby County Criminal Court, and the Court

ordered that Petitioner shall receive credit for fifteen months of time served in state custody.

(*Id.*, ECF No. 172 at PageID 265.)  The judgments were entered that day.  (*Id.*, ECF Nos. 170 &

172.)

## ANALYSIS

Federal courts are authorized to issue writs of habeas corpus when a prisoner "is in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3).  A § 2241 petition is the appropriate vehicle to challenge the execution of a federal

sentence.  *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991) ("Because defendant . . . is

challenging the manner in which the sentence was being executed, rather than the validity of the

sentence itself, Section 2255 does not apply.").

## I.    EXHAUSTION

The BOP has established a three-tiered Administrative Remedy Program by which an

inmate may progressively redress grievances at the institutional, regional, and Central Office

(national) levels.  *See generally* 28 C.F.R. § 542.10, *et seq.*[2]  Exhaustion of administrative

remedies within the BOP is a jurisdictional prerequisite to seeking court review of disciplinary

sanctions and the loss of sentence credit.  *See Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir.

---

[2]After the inmate has attempted to informally resolve his matter, an initial request is made to the Warden at the institutional level.  If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director within twenty days of receiving the Warden's response.  *See* 28 C.F.R. § 542.15.  If he is dissatisfied with the Regional Director's response, he may appeal to the General Counsel in the BOP's Central Office, Washington, D.C., within thirty days of receiving the Regional Director's response.  *Id.*  The Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his or her confinement, including appeals of disciplinary decisions by the disciplinary hearing officer.  28 C.F.R. § 542.10.

1981) ("It is well established that federal prisoners complaining of events or conditions related to their custody must exhaust their administrative remedies before habeas relief may be granted.") There is no dispute in this case that Petitioner has exhausted his administrative remedies with the BOP.  (*See* Case 2577, ECF No. 6 at PageID 40; *see also id.*, ECF No. 1-1.)

## II.   ILLEGAL SENTENCE CONTENTION

Barnett asserts that the Sentence Monitoring Computation Data states that a new federal sentence of 184 months and six days was imposed.  (*Id.*, ECF No. 1 at PageID 6; *see id.*, ECF No. 1-2 at PageID 19.)  Respondent argues that Petitioner misunderstands the 2017 amended judgment, explaining that the 184 months and six days takes into account the time that Petitioner served in custody before the 2017 judgment and includes consideration of the jail credit he received from July 4, 2002, to August 24, 2002, and from December 4, 2002, to January 6, 2003. (*See id.*, ECF No. 6 at PageID 43; ECF No. 7 at PageID 51, 90.)  Given this explanation, Respondent asserts that Petitioner fails to state a claim that he was sentenced to a new term of 184 months.  (*Id.*, ECF No. 6.)

Petitioner was first sentenced to a term of imprisonment of 265 months, then 235 months, and then time-served, before his 235-month sentence was reinstated.  He was never sentenced to a 184-month term.  He is mistaken about the length of his sentence and has not shown a basis for habeas relief on this claim.

## III.   SENTENCE CALCULATION

"Although it was the court that imposed the sentence, it is the BOP's job to determine how the sentence is executed."  *Rambo v. Hogsten*, No. CIV.A. 10-116-ART, 2010 WL 4791970, at *3 (E.D. Ky. Nov. 17, 2010).  Only the BOP has the authority to determine when a federal sentence commences.  *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007); *Doan v.*

7

*Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001).  And it is the Attorney General, acting through the BOP, who awards sentence credit.  *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993).

A court may, however, address the BOP's decision on these issues in a § 2241 petition. *United States v. Profitt*, No. 3:06-CR-136-1, 2014 WL 408299, at \*4 (S.D. Ohio Feb. 3, 2014) ("A petition brought under 28 U.S.C. § 2241 is the proper vehicle for challenging the BOP's administration of a sentence after exhausting administrative remedies."); *Rambo*, 2010 WL 4791970, at \*2 ("Because Rambo is challenging the manner in which the BOP is executing his sentence, rather than the validity of the sentence itself, his § 2241 habeas petition is the appropriate vehicle.").  However, the district court defers to the BOP's Policy Statements and its calculation of Petitioner's sentence.  *Rambo*, 2010 WL 4791970, at \*7.  After all, the BOP is "the agency charged with administering the credit statute" found in 18 U.S.C. § 3585.  *Reno v. Koray*, 515 U.S. 50, 60 (1995).  And the BOP's internal agency guidelines are entitled to "some deference" where they are based on a "permissible construction of the statute."  *Id.* at 61 (citations omitted).

Petitioner asserts that there is no explanation for the change in his projected release date from January 10, 2023, to October 1, 2024, or the difference in calculation of GCT.  (Case 2577, ECF No. 1 at PageID 6.)  He asserts that he should be granted fifteen months sentence credit, and that his total inoperative time should be 759 days, instead of 1,389 days.  (*Id.*)  Respondent argues that Petitioner fails to state a claim as to his sentence calculation and that the portion of his petition related to GCT is moot.  (*Id.*, ECF No. 6 at PageID 43, 445–47.)

8

## A.  Inoperative Time

Respondent relied on BOP Program Statement 5880.28 to assert that Petitioner is incorrect about the calculation of inoperative time.  (*Id.*, ECF No. 6 at PageID 43.)  BOP Program Statement 5880.28 addresses "inoperative time,"

> Once a sentence has begun to run, it may become "inoperative" (stop running) for a number of reasons, such as, escape, civil contempt, and release pending appeal.  The reason a sentence becomes inoperative as a result of the aforementioned reasons is because the prisoner is no longer in official detention, i.e., the prisoner is not in the custody of the Attorney General or the Bureau of Prisons.

> There is no statute that refers specifically to the term inoperative and there is no statute that states a sentence "stops running" when a prisoner causes himself to be removed from official detention.  Under 18 USC § 3585, however, a prisoner must be in official detention before the sentence commences, or before the prisoner may receive presentence time credit that can be applied to the sentence.  Therefore, the sentence cannot run, or must stop running, whenever the prisoner is not in official detention.  The BOP has no authority to grant time credit toward the service of a sentence when a prisoner is not in official detention.

> For example, a prisoner becomes an escapee upon departure from official detention (without official authorization or permission), and the sentence becomes inoperative beginning the next day and remains inoperative through the day before the prisoner is either recaptured or returns to official detention voluntarily. In other words, the prisoner receives a day of credit for the date of escape and a day of credit for the date of return to official detention.
> . . .

> If the escapee is arrested by state authorities for a state charge, then the federal sentence would not resume running until the prisoner was turned over to exclusive federal custody.  Production of the prisoner in federal court on the basis of a federal writ of habeas corpus ad prosequendum from state custody does not constitute a return to federal custody for the purpose of restarting the sentence from which the prisoner escaped.

*See* Federal Bureau of Prisons, Sentence Computational Manual (CCCA of 1984), BOP Program Statement 5880.28, https://www.bop.gov/policy/progstat/5880_028.pdf, Page 1-28, 1-29 (last accessed Aug. 18, 2023.)  "Inoperative time refers to time when, after a federal sentence is imposed, the defendant is no longer in 'official detention' because he or she has escaped, been

held in civil contempt, o[r] been released pending appeal." *Heard v. Quintana*, No. CV 5:18-166-KKC, 2019 WL 1085171, at \*4 (E.D. Ky. Mar. 7, 2019), *cause dismissed*, No. 19-5424, 2019 WL 5390023 (6th Cir. Aug. 16, 2019).

In 2017, when the Court amended Petitioner's sentence to time-served, he was released from prison and was no longer in official detention. He then began a three-year term of supervised release. (*See* Case 20440, ECF No. 139.) While on supervised release, Petitioner was arrested by Tennessee authorities on state charges and served a state sentence until he was paroled on June 1, 2021. Petitioner was not returned to federal custody until June 9, 2021. Therefore, the day after his release from federal imprisonment, August 19, 2017, until the day before he was returned to federal custody, June 8, 2021, was calculated as 1,390 days of inoperative time. (*See* Case 2577, ECF No. 6 at PageID 44–45; *see id.* ECF No. 7 at PageID 114.) Barnett's contrary contention fails to carry the day.

**B. The Fifteen-Month Sentence Credit**

As for the fifteen months of sentence credit Petitioner seeks, Respondent argues, based on BOP Program Statement 5880.28, that a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." (Case 2577, ECF No. 6 at PageID 45.) In this case Petitioner's federal sentence began in 2004, predating the state sentence. (*Id.*) Because the fifteen-month state-custody credit Barnett seeks came after the beginning of his federal sentence, Respondent asserts that the prior custody credit cannot be applied.

Prior custody credit is governed by 18 U.S.C. § 3585(b), which says:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

10

(1)     as a result of the offense for which the sentence was imposed; or

(2)     as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

*See* Federal Bureau of Prisons, Sentence Computational Manual (CCCA of 1984), BOP Program Statement 5880.28, https://www.bop.gov/policy/progstat/5880_028.pdf, Page 1-14 (last accessed Aug. 18, 2023.)  To apply prior custody credit for the *intermittent* period when Petitioner was released from federal custody based on the time-served sentence would violate the statute and applicable BOP policy because that period was not *prior* to the federal sentence.

After this litigation began, Respondent reduced Petitioner's inoperative time by fifteen months.  (Case 2577, ECF No. 6 at PageID 45–46.)  Initially, Petitioner's inoperative time was 1,390 days spanning the period from August 19, 2017, to June 8, 2021.  (*Id.*, ECF No. 7 at PageID 114.)  Respondent *now* calculates inoperative time at 938 days for the time from August 19, 2017, to September 15, 2019, and December 11, 2020, to June 8, 2021.  (*Id.*, ECF No. 6 at PageID 46; *see id.*, ECF No. 7 at PageID 123–24.)  Thus whether or not Petitioner is entitled to the credit, it appears that he received it by way of a reduction in his inoperative time.

### C.  Good Conduct Time

Petitioner complains about the change in his projected release date based on GCT.  (*Id.*, ECF No. 1 at PageID 6.)  In the Sentencing Monitoring Computation Data dated September 2, 2021, Petitioner's projected release date with GCT was January 10, 2023.  (*Id.*, ECF No. 1-3 at PageID 22.)  In a subsequent computation on October 15, 2021, the projected release date with GCT was determined to be October 1, 2024.  (*Id.*, ECF No. 1-4 at PageID 26.)  Barnett asserts that "[t]he total amount of good conduct time should be more.  My sentence should not have changed to an eighteen month difference."  (*Id.*, ECF No. 1 at PageID 6.)  In his petition to the

Bureau of Prisons, Barnett asserted that the release-date change of more than twenty months "came out of nowhere," and that "[s]omewhere his time has been miscalculated and should be corrected." (*Id.*, ECF No. 1-1 at PageID 11.) In its response, the prison explained that "GCT is not awarded for the dates you were not in custody" and that "[a]ll inmates are receiving the new, correct rate of GCT under the First Step Act." (*Id.* at PageID 12.)

Respondent asserts that, "[p]rior to the enactment of the First Step Act of 2018, the BOP applied Good Conduct Time for time served rather than the length of the sentence imposed." (*Id.*, ECF No. 6 at PageID 46.) Based on the implementation of the First Step Act, under 18 U.S.C. § 3624(b), Petitioner may receive credit "up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." (*Id.*, ECF No. 6 at PageID 46–47.) *See* 18 U.S.C. § 3624(b)(1). So, Respondent notes that Petitioner is *now* earning fifty-four days of GCT each year and is projected to eventually earn 1,124 days of GCT. (*Id.* at PageID 47; *see id.*, ECF No. 7 at PageID 53, 124.) Petitioner's projected release date advanced to July 31, 2024, with home detention eligibility on January 31, 2024. (*Id.*, ECF No. 7 at PageID 53, 122.)

Barnett's current GCT calculation has thus been based both on adjustments related to the inoperative time, as well as the adjustments required by the First Step Act of 2018. The BOP has updated Petitioner's sentence computation in accordance with the sentencing court's expressed intent, BOP Policy, and the relevant statutes, and will continue to do so, if changes occur. The BOP's sentencing calculation is entitled to deference. Further, Petitioner has not contested the updated sentence calculation that advances his release date, assuming he received credit for GCT.

12

## CONCLUSION

Because there is no error in the sentence computation, Petitioner has no right to habeas relief.  Accordingly, the Court **GRANTS** Respondent's Motion to Dismiss and **DENIES** the § 2241 Petition.  The Court shall enter Judgment for Respondent.

## APPELLATE ISSUES

Federal prisoners who file petitions under 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1).  *Durham v. U.S. Parole Comm'n*, 306 F. App'x 225, 229 (6th Cir. 2009); *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002) ("[A] federal prisoner seeking relief under § 2241 is not required to get a certificate of appealability as a condition to obtaining review of the denial of his petition."); *see Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (28 U.S.C. § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the $505 filing fee required by 28 U.S.C. §§ 1913 and 1917.  To appeal *in forma pauperis* in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status under Federal Rule of Appellate Procedure 24(a).  *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1).  But Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must move to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)–(5).  For the reasons explained above, the Court finds that any appeal would not be taken in good faith.  The Court therefore **CERTIFIES** under Federal Rule of Appellate

Procedure 24(a) that any appeal here would not be taken in good faith, and the Court **DENIES**

Petitioner leave to appeal *in forma pauperis*.

      **IT IS SO ORDERED** this 20th day of September, 2023.

<div style="margin-left:40%">

s/ Sheryl H. Lipman
_____
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

</div>